IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>ROBERT LEE KOBE<br>        Defendant. | No.9:15-CR-00021-RC |

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR INJUNCTIVE RELIEF, MOTION FOR RELEASE, AND MOTION FOR TRANSFER

Pending before the court is Defendant's Motion for Injunctive Relief (Doc. No. 57), Motion for Compassionate Release due to COVID-19 (Doc. No. 58), and Motion Requesting Transfer of Supervised Release (Doc. No. 59.)  This matter is referred to the undersigned United States magistrate judge for review, hearing, and submission of a report with recommended findings of fact and conclusions of law.  *See United States v. Rodriguez*, 23 F.3d 919, 920 n.1 (5th Cir. 1994); *see also* 18 U.S.C. § 3401(i) (2000); E.D. Tex. Crim. R. CR-59.  The Government filed a response.  (Doc. No. 60.)  Having considered the pending motions, response, the record, and the applicable law, the undersigned recommends that these motions should be DENIED.

## I.  BACKGROUND

On April 6, 2016, Robert Lee Kobe, the Defendant, pleaded guilty to Count One of the Indictment, Bank Robbery, in violation of 18 U.S.C. § 2113.  (Doc. No. 24, 29.)  On August 11, 2016, Kobe was sentenced to 60 months' imprisonment, followed by 3 years' supervised release.  (Doc. No. 35, 36.)  In the instant motions, Kobe seeks immediate release through an injunction,

immediate compassionate release due to COVID-19, and a transfer of his supervised release to another district. The undersigned will first address Kobe's Motion for Compassionate Release.

## II. ANALYSIS AND RECOMMENDATION

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i)-(ii). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant

the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *1 (S.D. Tex. June 17, 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that a defendant must first exhaust his administrative remedies before seeking relief from the court. *United States v. Handerhan*, No. 1:10-CR-00298, 2019 WL 1437903, at *1 (M.D. Pa. Apr. 1, 2019) ("This section authorizes release after a movant has exhausted his administrative remedies if 'extraordinary and compelling reasons warrant such a reduction.'" (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

In the instant motion, Kobe does not indicate that he has pursued his administrative remedies regarding his concerns surrounding the COVID-19 outbreak. As such, the court is without authority to waive the full exhaustion of his administrative remedies. *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020) ("Section 3852(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period.").

In addition, even if Kobe had exhausted his remedies, an applicant for compassionate release must show extraordinary and compelling reasons exist to warrant his release. In Application Note 1 to § 1B1.13 of the United States Sentencing Guidelines Manual, the Commission defines "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and

compelling reason. The policy statement regarding compassionate release also requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Kobe is 51 years old and contends in his motion that he is in danger of being exposed to COVID-19. Kobe does not allege any pre-existing medical conditions. In the presentence report, Kobe "described his overall physical condition as good. The defendant reported no history of health-related issues and added that he is currently not taking any prescription medication." (Doc. No. 33.) Kobe also alleges in his motion that his family is financially destitute. However, those facts alone do not rise to the necessary statutory requirements. Consequently, there are no extraordinary and compelling reasons that would justify Kobe's release.

Moreover, Kobe's criminal history also weighs against compassionate release. He has numerous prior convictions, including theft (2), unauthorized use of a motor vehicle (3), grand theft auto (2), burglary, bank robbery, interference with commerce by theft and violence, use of firearm during a crime of violence, felon in possession of a firearm, making a false statement to acquire a firearm, and attempt to escape from a penitentiary. (*Id.*) Kobe also has a history of disregarding his conditions of state parole and federal supervised release. (*Id.*) Therefore, the undersigned cannot conclude that Kobe would not pose a danger to the safety of any other person or the community, if released.

Furthermore, Kobe's fear of contracting COVID-19 does not establish that the BOP cannot manage any outbreak that may occur within his correctional facility or that the facility is specifically unable to treat Kobe, if he were to contract the virus and develop COVID-19 symptoms while incarcerated. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)

4

("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A]s defendant does not assert that he is suffering from a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

As a result, Kobe has failed to meet the requisite standard for compassionate release. Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. *See Collins*, 2020 WL 1929844, at *3. The Memorandum to the BOP by Attorney General Barr on March 26, 2020, acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. Attorney General Barr also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."

In summary, Kobe has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.

*See United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *4-5 (W.D. La. Apr. 21, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). It is therefore the recommendation of the undersigned that the Defendant's Motion for Release be DENIED.

Kobe also filed a motion for "time served" and a motion for injunctive relief alleging that his sentence has been satisfied in its entirety due to credit for time served, so he should be released immediately. (Doc. No. 57, 58, 61.) However, Kobe later filed a letter with the court admitting that his *eligibility* for *community confinement* is not until July 14, 2020. (Doc. No. 61, 62.) Further, Judge Clark previously entered an order clarifying Kobe's sentence in this case, as well as his sentences for revocation of his supervised release in two other federal cases, and also his revocation sentences for state offenses in Texas. (Doc. No. 41.) He also ordered that Kobe receive credit for time served back to October 13, 2015. (*Id.*) Therefore, to the extent, Kobe requests immediate release, that request should also be denied.

To the extent Kobe is asserting a time calculation error, he has not exhausted his administrative remedies as required under 28 U.S.C. § 2241. The district court has authority to grant a writ of habeas corpus if the prisoner is in custody under the authority of the United States or if he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(1),(3). However, a federal prisoner generally must exhaust his administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir.), *cert. denied*, 541 U.S. 1036 (2004); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994); *see also Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). The Federal Bureau of Prisons (BOP), which administers the prison in which plaintiff is incarcerated, has a

four-step process for resolving complaints by prisoners. Initially, a prisoner must attempt to informally resolve the complaint with staff. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the Warden. 28 C.F.R. § 542.14. If the prisoner is not satisfied with the warden's response, he may appeal to the Regional Director. 28 C.F.R. 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel. *Id.* Kobe does not allege he has taken any of these measures.

Further, Kobe's motion requesting transfer of supervised release to Lake Charles, Louisiana should be denied as premature, as Kobe has yet to begin serving his term of supervision.

In summary, it is the undersigned's recommendation that Kobe's pending motions (Doc. Nos. 57, 58, 59) should be DENIED.

### III. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report, and (4) no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2); Local Rule CV-72(c). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy

7

of this report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 5th day of June, 2020.

_____
Zack Hawthorn
United States Magistrate Judge